**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHAMPAINE ECHOLS : | |
| *Individually and on behalf of* : | |
| *All Other Similarly Situated Consumers* : | |
| : | |
| v. : | **CIVIL ACTION NO. 19-4125** |
| : | |
| PREMIERE CREDIT OF NORTH : | |
| AMERICA, LLC : | |

McHUGH, J.                                                                                                          February 8, 2021
**MEMORANDUM**

      This is a putative class action under the Fair Debt Collection Practices Act ("FDCPA"). Champaine Echols ("Plaintiff") alleges that Premiere Credit of North America ("Defendant") sent her a deceptive notice in order to collect a credit card debt. The notice stated that the debt listed was current as of the date the notice was sent, but further claimed that the debt could "increase or decrease." A toll-free number was listed for the recipient to call and confirm the payoff amount. Plaintiff contends that Defendant's notice created "a false sense of urgency" to repay the debt and that it failed adequately to convey "the amount of the debt," in violation of the FDCPA. Defendant responds that the notice was both accurate and adequate, and points to persuasive authority from the Seventh Circuit as endorsing its approach.

      Having reviewed the parties' cross-motions for summary judgment, I conclude that the language of the notice is not misleading and that it adequately states the amount of debt owed. I will therefore grant Defendant's Motion for Summary Judgment in full.

      **I.**    **Factual Allegations and Procedural Posture**

      On or about November 27, 2018, Plaintiff received a letter from Defendant ("Premiere"). *See* Stipulation Undisputed Facts ¶ 2, ECF No. 24. Defendant is a debt collection company and

sent the letter to collect a credit card debt that Echols incurred for household and personal purposes. *See* First Am. Compl. ¶¶ 6, 7, ECF No 22;[1] Stipulation Undisputed Facts ¶ 3. The letter at issue noted that the debt amount was $173.93 but included conditional language that the "amounts listed are current as of 11/27/2018. Amounts may increase or decrease due to application of payments and/or adjustments. Please call (888) 403-1647 for a payoff amount." Compl. Ex. A, at 13, ECF No. 1. *See also* Stipulation Undisputed Facts ¶ 2.

The debt originated with Synovus Bank, and Defendant does not collect interest, collection fees, or late fees on Synovus Bank accounts. *See* Stipulation Undisputed Facts ¶ 4. Defendant is, however, authorized[2] to collect the balances of Synovus Bank accounts, which may differ from the amount listed on Defendant's notice if the debtor pays the balance or if their payments bounce. *See* Sarah DeMoss Dep. 46:15–47:24.[3] Defendant uses the term "adjustments" to refer to these balance changes. *Id.* at 47:10–11.

Plaintiff primarily contends that the collections letter, as drafted, fails to clearly state the debt amount and "creates a false sense of urgency and a false impression that the debt will accrue." Pl.'s Summ. J. Mem. 3, ECF No. 25-1. She alleges that an unsophisticated consumer could interpret "adjustments" to mean interest or other charges. *Id.* at 9. Plaintiff further avers that her

---

[1] The parties did not formally stipulate to this fact, but Defendant does not claim that there is a dispute with respect to this issue.

[2] On December 9, 2020, the Court requested that Defendant produce a copy of its contract with Synovus Bank. *See* ECF No. 35. The agreement provides that Premiere has the obligation to "establish and maintain appropriate records for all accounts including original principal balance, payments made, and other operational data." Premiere also "shall receive and post all payments on each Account that is placed for service by Premiere." Defendant has also testified that when a payment is made to the original creditor, information is transmitted to Premiere so it can collect the remaining balance. *See* DeMoss Dep. 56:7–19. This language and testimony establish that, once Synovus Bank refers an account, Defendant is authorized to collect fluctuating balance amounts. Plaintiff presented no evidence or argument to the contrary.

[3] The parties electronically filed portions of Ms. DeMoss's deposition but were later directed to produce the deposition in its entirety, via email, for the Court's review.

interpretation is bolstered by the letter's statement that the balance is "current as of 11/27/2018" as well as its instruction that the consumer call to obtain the most up-to-date balance. *Id.* at 6–7.

Premiere Credit, in its cross-motion for summary judgment, argues that the collection language is not misleading because interest and fees are not mentioned. *See* Def.'s Summ. J. Mem. 2, ECF No. 26-1. Defendant further claims that "adjustments" could not be reasonably read to include interest because the letter also provides for the possibility that the amount of the debt might *decrease*. *See* Def.'s Resp. Opp'n. Pl.'s Summ. J. Mot. 2–3, ECF No. 28 ("Def.'s Opp'n.) (emphasis added). And finally, Premiere maintains that its statement that the debt amount is current as of a certain date is accurate, as the debt is dynamic and bounced charges, payments, or other credit adjustments may cause the debt amount to fluctuate. *See* Def.'s Summ. J. Mem. 7.

## II. Standard of Review

The parties' motions for summary judgment are governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III. Discussion

In 1977, Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Schultz v. Midland Credit Mgmt., Inc.*, 905 F.3d 159, 161 (3d Cir. 2018) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). Because the FDCPA is remedial, courts must "construe its language broadly, so as to effect its purpose." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018).

The Third Circuit has held that "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged

practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (citing *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018)).  Because Defendant does not contest the first three elements of Plaintiff's claim, I will focus on whether Premiere has violated either of the potentially applicable statutory provisions.

A. Plaintiff's Claims Under § 1692(e)

The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e).  The law further bars debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692(e)(10).

Plaintiff primarily contends that Defendant's collection notice is misleading and violates sections 1692(e) and (e)(10), as an unsophisticated consumer could read the term "adjustments" to include interest, late fees, and other charges, which Premiere has stipulated it is not authorized to collect.  *See* Pl.'s Summ. J. Mem 9; Stipulation Undisputed Facts ¶ 4.  She further claims that the "as of this date" language and the instruction that the consumer call to request the payoff amount would also lead an unsophisticated debtor to assume that interest and other fees are accruing.  *Id.* at 6–7.  "The implication upon reading this letter is clear," Plaintiff argues, "if the consumer does not make an immediate payment, the amount is going to increase."  *Id.* at 6.

"Whether a collection letter is 'false, deceptive, or misleading' under § 1692(e) is determined from the perspective of the 'least sophisticated debtor.'"[4]  *Schultz*, 905 F.3d at 162.

---

[4] Neither party relies upon consumer surveys or extrinsic material in support of their arguments, and, therefore, the question of whether the notice is misleading does not "turn on the credibility of extrinsic evidence." *Wilson v. Quadramed Corp.,* 225 F.3d 350, 353 n.2 (3d Cir. 2000).  As a result, whether the "least sophisticated debtor" would be misled is a question of law in this case.  *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 424 n.5 (3d Cir. 2015).

4

The "least sophisticated debtor" standard is more protective than a "reasonable debtor" test, as Congress intended to protect "the gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection practices." *Id*. The plaintiff "need not prove that she was actually confused or misled, but only that the objective least sophisticated debtor would be." *Jensen,* 791 F.3d at 419. That said, the "least sophisticated debtor standard nonetheless "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Tatis*, 882 F.3d at 427.

A collection letter is deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate*.*" *Schultz*, 905 F.3d at 163. More particularly, a debt collector may not imply "that certain outcomes might befall a delinquent debtor, when legally, those outcomes cannot come to pass." *Id.* at 164 (citing *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018)). Where there is such uncertainty, "the debt collector that fails to clarify that ambiguity does so at its peril." *Id.* at 163. But liability will not attach under the least sophisticated debtor standard for "bizarre or idiosyncratic interpretations of collection notices." *Quadramed Corp.*, 225 F.3d at 354.

In cases where the debt can fluctuate, the Seventh Circuit has endorsed the "safe harbor" language established in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). There, the court approved the following language in cases where the debt amounts are dynamic:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number]. *Id*.

Defendant's notice appears to be an adaptation of *Miller*. It removes references to "interest late charges, and other charges" and notifies recipients that amounts "may increase *or decrease*." Compl. Ex. A, at 13. *See also* Def.'s Summ. J. Mem. 1 (alluding to "safe harbor" language).

On its face, the notice is not explicitly false or inaccurate, as Defendant has not expressly claimed that charges are accruing or threatened actions it cannot legally take. This distinction separates Defendant's letter from other cases where the Third Circuit has found FDCPA violations. *See, e.g.*, *Schultz*, 905 F.3d at 165 (holding that collectors' statement that it may report loan forgiveness to the IRS violated the FDCPA, as the company knew that discharging the debt could not legally result in an IRS report"). Here, Defendant's contract with Synovus Bank legally authorizes it to collect balances after adjustments are made.[5] *See* DeMoss Dep. 46:15–47:24 (describing Defendant's process of adjusting balances). Because Premiere is permitted to collect payments and adjusted balances, its representation that "[a]mounts may increase or decrease due to application of payments and/or adjustments," Compl. Ex. A, at 13, is accurate.

The cases cited by Plaintiff are similarly distinguishable, as the unlawful notices referenced payments that the debt collection agencies could not legally collect. *See, e.g.*, *Boucher*, 880 F.3d at 367 (listing "late charges and other charges" was misleading because the collector could not lawfully impose them"); *Reeseg v. General Revenue Corp.*, No. 14-8033, 2015 WL 4525869, at *3 (D.N.J. Jul. 27, 2015) (holding that the plaintiff stated a claim where the debt collector referred to interest and other charges that it could not legally collect); *Hassine v. Simon's Agency, Inc.*, No.

---

[5] In keeping with this duty, Defendant is contractually obligated, per its confidential agreement with Synovus Bank, to "establish and maintain appropriate records for all accounts including original principal balance, payments made, and other operational data." Contract, p. 3. This document was produced to the Court and Plaintiff's counsel via email.

18-9031, 2020 WL 3481815, *4 (D.N.J. Jun. 26, 2020) (same); *Safdieh v. P & B Capital Grp., LLC*, No. 14-3947, 2015 WL 2226203, *5 (D.N.J. May 12, 2015) (same).

A debt collector may still be liable if the least sophisticated debtor could "reasonably read [its collection notice] to have two or more different meanings, one of which is inaccurate." *Schultz*, 905 F.3d at 163. As Plaintiff correctly observes, "a letter does not have to explicitly mention an action, it is sufficient that an action is implied." Pl.'s Summ. J. Mem. 11. *See also Rosenau v. Unifund Corp*, 539 F.3d 218, 223 (3d Cir. 2008). In this case, liability under section 1692(e) turns on the question of whether the least sophisticated debtor would reasonably read "adjustments"[6] to *imply* that interest, late charges, or other charges are accruing. *See Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011) (finding that the letters that "falsely imply that an attorney, acting as an attorney, is involved in collecting Lesher's debt" violate the FDCPA).

Premiere argues that Plaintiff's proposed reading of "adjustments" is idiosyncratic and clearly belied by the letter's statement that adjustments may cause the amount to "increase *or decrease*." (emphasis added). *See* Def.'s Opp'n. 2–3. I agree. In this context, the term "adjustments" is most naturally understood as the posting of credits and debits to an account. This is particularly so because the notice states that the balance could increase or decrease, undercutting Plaintiff's argument that interest is necessarily implied. Plaintiff cites a case where use of the term "adjustments" was construed by the court to include interest, late fees, or other charges. *See* Pl.'s Summ. J. Mem. 9. There, however, the notice stated only that the balance

---

[6] Both parties claim that dictionary definitions of "adjustment" support their claims. The most relevant definition from Black's Law Dictionary is "[a]n amount added or deducted based on settlement." Potentially relevant Merriam-Webster definitions include "1. the act or process of adjusting; 2. a settlement of a claim or debt in a case in which the amount involved is uncertain or full payment is not made; and 5. a correction or modification to reflect actual conditions." I do not find that the definitions are dispositive for either party.

could *increase*. *See, e.g.*, *Reeseg*, 2015 WL 4525869, at *1 ("[T]he amount required to pay your balance in full on the day you send payment may be greater than the amount stated here. If you pay the amount stated here, an adjustment may be necessary").

Plaintiff assumes that the least sophisticated debtor is necessarily aware that interest, late charges, and other charges increase the debt, thus creating "a false sense of urgency" that pressures the debtor to make a payment early. Pl.'s Summ. J. Mem. 3. But this is logically inconsistent with the language of the notice itself. In fact, the notice contemplates the possibility of a decrease due to the application of payments "or" adjustments, thereby implying that an "adjustment" could also decrease the balance.[7] It would be idiosyncratic, therefore, to assume that "adjustment" includes interest and other charges that would necessarily increase the debt. The fact that the notice also includes "as of this date" language, as well as a 1-800 number, does not disturb this conclusion, as these statements do not contradict or overshadow the notice's statement that the balance may decrease "due to application of payments and/or adjustments." Compl. Ex. A, at 13. In fact, had Defendant omitted the term "adjustments," a debtor could incorrectly assume that Defendant was only empowered to collect the amount of debt stated on the notice.

Plaintiff's final contention with respect to section 1692(e) is that Defendant's letter is deceptive and misleading because balance adjustments (such as chargebacks from payments or payment disputes) are "infrequent, rare, and certainly known by the consumer."[8] Pl.'s Summ. J. Mem. 11. In support, she invokes *Brown*'s conclusion that "[a] debt collector "may state that a certain action is possible, [only] if it is true that such action is legal and is frequently taken by the collector with respect to similar debts." 464 F.3d at 455. There, the Third Circuit declined to

---

[7] For example, a balance may be adjusted downward if the consumer successfully disputes a credit card charge.

[8] Ironically, for purposes of this argument, Plaintiff hypothesizes a somewhat more sophisticated debtor reading something into the notice based on their personal knowledge.

define "frequently taken," but took issue with the fact that the defendant had threatened that it "could" initiate litigation against debtors that did not respond within five days, an action that it had "no intention of taking and has never or very rarely taken before." *Id.*

The parties agreed to submit this case on cross-motions for summary judgment. Plaintiff now seeks to create a factual dispute under *Brown* regarding the frequency of the balance adjustments. A dispute is genuine "only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). The *Brown* court took issue with the fact that the debt collector had "never" or "very rarely" taken the threatened action. 464 F.3d at 455. Subsequent Third Circuit cases interpreting *Brown* have also primarily addressed instances where a debt collector cannot take the action it implies. *See Schultz*, 905 F.3d at 165 (reasonable juror could find FDCPA violation where debt collector threatened actions it could not legally take); *Rosenau,* 539 F.3d at 223 (concluding it was a violation to sign a letter as a "legal department" without employing attorneys on staff); *Lesher*, 650 F.3d at 1003 (implying attorney had reviewed file when none had).

But the record in this case indicates that balance adjustments occur as a matter of course. *See* Def.'s Mot. Summ. J. Ex. A ¶ 6, ECF No. 9-2 ("[c]orrections or adjustments by the original creditor to balances owed by accountholders occur regularly and for a variety of reasons"); *Id.* ¶ 7 ("[c]reditors often receive payments from consumers after accounts have been placed with Premiere Credit"). Plaintiff attempts to create a dispute of fact by arguing that the deposition testimony shows that adjustments are rare. *See* Pl.'s Summ. J. Mem. 11 (citing DeMoss Dep., 46:15–48:2). However, the portion of the record invoked by Plaintiff does not support her claim that adjustments are infrequent; it merely describes the types of actions that would qualify as

9

"adjustments." *See* DeMoss Dep., 46:15–48:2. Furthermore, regardless of frequency, Premiere was specifically authorized by Synovus to collect all amounts due, and indisputably did so. There is no material issue of fact with respect to this issue.

B. Plaintiff's Claims Under § 1692(g)

Under the FDCPA, a debt collector must send the consumer a notice that contains "the amount of the debt" within "five days after the initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a)(1). Here, Plaintiff contends that Premiere's notice violated the statute as a matter of law because it states a balance but then directs the consumer to call for any change in that balance. Whether the notice is misleading depends upon the role Premiere was asked to play by the holder of the debt, Synovus. If Premiere could not collect anything beyond the amount stated in the notice, then the direction to call could be misleading in violation of sections 1692g(a)(1) and (e). This claim fails because, as noted above, Premiere was empowered to collect fluctuating balances.

Compliance with section 1692(g) is also interpreted from the perspective of the least sophisticated debtor and requires effective explication of the debtor's rights. *See Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020). Moreover, "the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." *Id.* The Third Circuit has not construed section 1692g(a)(1) in a precedential opinion, but this provision has been examined by other circuits, as well as a non-binding panel of the Third Circuit. *See Dotson v. Nationwide Credit, Inc.*, 828 Fed. Appx. 150, 153 (3d Cir. 2020).

The parties focus on the Seventh Circuit's decision in *Chuway v. National Action Financial Services* in some detail, advancing it as persuasive authority. 362 F.3d 944 (7th Cir. 2004) (Posner,

J.). The balance at issue in *Chuway* was accruing due to interest, but the creditor had not authorized the debt collector to collect the increase in the balance amount. *Id.* at 947 (observing that the debt collector had not been hired to collect the "current" balance of Plaintiff's credit card). In other words, from the perspective of the debt collector, the debt was static. *Id.* The company's instruction that debtors call and learn their balance amount was therefore misleading, because the amount that the debt collector was hired to collect would not change. *Id.*

The logic of *Chuway* is instructive but supports Defendant because Premiere was authorized to collect the adjusted balance of Plaintiff's account. Premiere's contract with Synovus Bank requires Defendant to "establish and maintain appropriate records for all accounts including original principal balance, payments made, and other operational data."[9] And when a payment is made to the original creditor, information is transmitted to Premiere so it can collect the remaining balance. *See* DeMoss Dep. 56:7-19. Consumers may also login to the Premiere online portal to see their updated balance. *Id.* at 52:14-19. Taken together, this confirms that Premiere was directed to collect a dynamic debt, namely, the adjusted balance of the account.

Plaintiff argues that the fact that the balance could change based on payments and adjustments does not necessarily render it dynamic, as "every balance is subject to change based on payments." Pl.'s Reply Resp. Mot. Summ. J. 5, ECF No. 29. This may be true as a general matter, but it misunderstands *Chuway*, which focused on whether the *debt collector had the authority* to collect the changing balance. 362 F.3d at 947. Here, the record indicates that Premiere is authorized to collect the creditor's balance even after it has increased or decreased due to payments and credit adjustments. Moreover, as the FDCPA only requires a debt collector to send out one notice, *see* 15 U.S.C. § 1692g(a)(1), Premiere's letter properly lists the amount of debt on

---

[9] Defendant asserts that its contract is confidential and did not file it on ECF but supplied it to the Court and Plaintiff's counsel by email.

11

the date that the letter was sent and provides a means for the least sophisticated debtor to ascertain whether the debt is fluctuating. It is worth noting that both *Miller* and *Chuway* were decided by the Seventh Circuit, with *Miller* being the later case. Premiere's notice is consistent with the approach approved by the Seventh Circuit in *Miller,* where the debt similarly fluctuated. 214 F.3d at 875–76 ("The requirement is not satisfied by listing a phone number … What they certainly could do was to state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent").

Defendant's letter also contains several features that mitigate against the risk of harm identified in *Chuway*. Had the *Chuway* plaintiff called regarding her $367.42 debt but discovered that the balance was $567.42 (on account of interest accruing), she would not have known what amount should be remitted to the defendant debt collector without further inquiry. 362 F.3d at 947–48. The court expressed concern that the plaintiff would pay the larger amount for fear of suit, even though the defendant's authorization to collect was limited to the $367.42 listed on the notice. *Id.* at 948. Here, in contrast, Defendant is authorized to collect the current balance and helped inform consumers by (1) stating the date that the amount was calculated (11/27/2018); (2) specifying the limited scenarios under which the balance could change, namely, the "application of payments and/or adjustments"; and (3) allowing consumers to call to obtain their current balance that was due for collection. Compl. Ex. A, at 13.

These features comport with language that has been sanctioned by the Seventh Circuit, the Second Circuit, and a panel of the Third Circuit. *See Dotson*, 828 Fed. Appx. 150 at 152 (observing that including an "as of date" can reduce confusion by "preventing any misunderstanding that could arise if, for example, a payment crossed in the mail with the collection letter"); *Miller*, 214 F.3d at 876 (approving language in the case of a dynamic debt that included as "as of date," the

ways in which the balance would change, and a number for the creditor to call); *Avila v. Riexinger & Assoc., LLC*, 817 F.3d 72, 76 (2d Cir. 2016) (holding that the *Miller* language qualifies as a safe harbor).  Such an approach seems to comport with the requirements of the FDCPA.  Additionally, as a matter of comity and in the absence of compelling arguments to the contrary, I am reticent to hold that core elements of "safe harbor" language endorsed by other circuits are misleading and violative of section 1692(g), particularly where a panel of the Third Circuit has embraced a similar approach.

### IV.    Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied.  Defendant's Motion for Summary Judgment will be granted.  An appropriate order follows.

    /s/ Gerald Austin McHugh  
United States District Judge